## Wolf
## v.
## McCullough-Hyde Memorial Hospital
*[Cite as 2 AOA 698]*

*Case No. CA89-07-098*
*Butler County, (12th)*
*Decided April 16, 1990*

*Brannon, Hall & Tucker, Dwight D. Brannon and James J. Fullenkamp, 6 S. Patterson Blvd., Suite 300, Dayton, Ohio 45402, for plaintiffs-appellants.*

*Millikin & Fitton Law Firm, James E. Michael and Gregory E. Hull, P.O. Box 598, Hamilton, Ohio 45012, for defendant-appellee, McCullough-Hyde Memorial Hospital, Inc.*

KOEHLER, J.
This case is on appeal from a summary judgment rendered in favor of defendant-appellee, McCullough-Hyde Memorial Hospital, Inc. (hereafter "McCullough-Hyde"). The trial court's judgment included Civ. R. 54(B) language thereby preserving appellant's cause of action against his employer, Oxford Emergency Physicians (hereafter "Oxford Emergency") and its chief executive officer, James Goldey, M.D.

McCullough-Hyde contracted with Oxford Emergency for emergency room services at the hospital. Plaintiff-appellant Raymond D. Wolf, D.O., was assigned by Oxford Emergency to provide such coverage for the hospital. On August 7, 1988, Richard A. Daniels, administrator of McCullough-Hyde, exercising his authority under Article II(A) of the hospital's by-laws, summarily suspended Wolf's hospital privileges, thereby precluding further services by Wolf on behalf of his employer, Oxford Emergency.

Wolf endeavored to invoke his review rights by requesting a hearing before the medical executive committee of McCullough-Hyde. The requested hearing was scheduled for August 29, 1988; however, the hearing was canceled and

Wolf's suspension rescinded. Wolf subsequently applied for reappointment and reinstatement of his clinical privileges which were denied by McCullough Hyde. Oxford Emergency refused to assign Wolf to further work asserting that, during the period of the suspension, it was necessary to fill the "vacated" position.

On November 25, 1988, Wolf filed suit in the Butler County Court of Common Pleas alleging a conspiracy and tortious interference with a business relationship by all defendants, McCullough-Hyde, Goldey, and Oxford Emergency. McCullough-Hyde filed a motion for summary judgment on March 29, 1989, which was opposed by Wolf.

The trial court rendered summary judgment in favor of McCullough-Hyde on June 14, 1989, finding that no genuine issue of material fact existed concerning Wolf's claim of a tortious interference with a business relationship. The trial court, in finding for McCullough-Hyde, held that a suspension of a physician's hospital privileges resulting in the termination of employment with the provider of emergency room services to the hospital, did not constitute a tortious interference with a business relationship. In its judgment entry dated July 11, 1989, the court directed the dismissal of McCullough-Hyde only, as a final, appealable order.

Wolf now brings the instant appeal setting forth the following assignment of error:

"The lower court erred in granting McCullough-Hyde's motion for summary judgment when a genuine issue of fact existed regarding the suspension of Dr. Wolf for which no hearing was ever provided."

In his assignment of error, Wolf essentially raises two issues. First he argues that his summary suspension was improper as contrary to the dictates of procedural due process, since a "hearing" was never held to determine the validity of the suspension. We do not agree.

I.

The first question for our resolution is whether a hospital can be held liable for the failure to follow procedures outlined in its medical staff by-laws.

In *Munoz* v. *Flower* (1985), 30 Ohio App. 3d 162, the Court of Appeals for Lucas County stated:

"A review of cases from other jurisdictions shows there is a split of authority over whether a hospital's staff by-laws contractually bind the hospital to follow those by-laws. Some cases say that staff by-laws do contractually bind the hospital. *** (citations omitted). Some cases hold that staff by-laws do not contractually bind the hospital. *** (citations omitted). The cases holding that a hospital is bound by its staff by-laws base their decisions of the reasoning that if the hospital is not bound by the by-laws, then essentially the by-laws would be meaningless. The cases holding that a hospital is not bound by its staff by-laws base their decisions on the reasoning that there is no consideration or mutuality of obligation between the parties and therefore the staff by-laws are not a binding contract. The most enlightened reasoning seems to be that staff by-laws can form a binding contract between the doctors and hospital but only where there can be found in the by-laws an intent by both parties to be bound. ***"

Assuming that the medical staff by-laws are binding on both McCullough-Hyde and its staff, Wolf's claim that his procedural due process rights were violated a result of his suspension without proper procedure is without merit.

McCullough-Hyde has a published set of by-laws providing for the summary suspension of clinical privileges of a physician whenever in the "best interest of patient care" in the hospital. Article VII, Section 2(A) states:

"Any one of the following – a chairman of the executive committee, the chief of staff, a chief of service, and chief executive officer and the executive committee of either the medical staff or the governing body -- shall each have the authority, whenever action must be taken immediately in the best interest of patient care in the hospital, to summarily suspend all or any portion of the clinical privileges of a practitioner, and such summary suspension shall become effective immediately upon imposition."

McCullough-Hyde maintains that Wolf was summarily suspended due to his unjustifiable conduct in leaving the emergency room by asserting a case of "patient abandonment." However, the record is conflicting, with Wolf contending that the emergency room was "covered" and that he was investigating inaccuracies in emergency room charts. In any event, Wolf argues that McCullough-Hyde failed to satisfy his procedural due process rights due to the absence of a hearing on the matter, despite withdrawal and expungement of the suspension.

Article VII, Section 2(b) of McCullough-Hyde's by-laws states:

"A practitioner whose clinical privileges have been summarily suspended shall be

entitled to request that the executive committee of the medical staff hold a hearing on the matter within such reasonable time period thereafter as the executive committee may be convened in accordance with Article VIII of these by-laws."

However, Section 2(c) of McCullough-Hyde's by-laws also states that if a *summary suspension is not immediately terminated* then only at this time may a practitioner be entitled to appellate review by the governing body.

In the present case, Wolf received what he desired by having his suspension withdrawn prior to hearing. McCullough-Hyde properly followed the procedure set forth in its by-laws. Hence, the decision by McCullough-Hyde to withdraw its suspension of Wolf rendered the reason for such hearing fruitless and moot.

Generally, in order for the constitutional protections of due process to apply in a particular situation, the existence of state action must be present. McCullough-Hyde is a privately owned and operated facility which is open to the public for the treatment and care of patients. Therefore, Wolf cannot establish the existence of state action through the actions of McCollough-Hyde which would ordinarily merit due process protections:

"The 'due process' clause of the Fourteenth Amendment to the United States Constitution does not provide any shield against private conduct abridging a person's constitutional rights, unless it is done under color of state law. See: *Mulvihill* v. *Butterfield Memorial Hospital* (S.D.N.Y. 1971), 329 F. Supp. 1020 ***." (Citations omitted.) *Gotsis* v. *Lorain Community Hospital* (1974), 46 Ohio App. 2d 8, 15.

However, in *Khan* v. *Suburban Community Hospital* (1976), 45 Ohio St. 2d 39, the Ohio Supreme Court held:

"Where the board of trustees of a private, non-profit hospital adopts reasonable, non-discriminatory criteria for the privilege of practicing major general surgery in the hospital, and procedural due process is followed in adopting and applying such criteria and a staff physician is unable to qualify thereunder, a court should not substitute its evaluation and judgment of such matters for those of the board of trustees and order the granting of such specialty privileges to the physician." *Id.* at syllabus.

Thus, the board of trustees of a private hospital has broad discretion in determining who is permitted to have staff privileges and, as a result, courts should not interfere with the exercise of this discretion unless the hospital has acted in an arbitrary, capricious or unreasonable manner, constituting an abuse of discretion. See *Bouquette* v. *St. Elizabeth Corp.* (1989), 43 Ohio St. 3d 50.

We find that Wolf was afforded sufficient due process to satisfy both *Kahn, supra*, and McCullough-Hyde's own by-laws, since the intended purpose of a summary suspension hearing did not exist subsequent to the hospital's withdrawal of the termination. Accordingly, Wolf's due process argument fails for these reasons.

II.

The second issue raised by Wolf's assigned error maintains that summary judgment was improper since a genuine issue of fact does exist concerning the elements of the tortious interference with a business relationship cause of action. We agree.

Civ. R. 56(C), governing the application of summary judgments, states in pertinent part:

"*** summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. ***"

In the context of a summary judgment, the trial court must determine the following: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion, which is adverse to the party against whom the motion for summary judgment is made who is entitled to have the evidence construed most strongly in his favor. *Wills* v. *Frank Hoover Supply* (1986), 26 Ohio St. 3d 186; *Harless* v. *Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 66.

In essence, summary judgment is a procedural device for terminating litigation where according to law, a case or controversy

ceases to exist. A successful motion for summary judgment is sustained on a two-part foundation that no genuine issue of material fact is present and the moving party is entitled to judgment as a matter of law.

In his complaint, Wolf alleges a tortious interference with a business relationship on the part of all defendants predicated on his summary suspension by McCullough-Hyde which resulted in the termination of his employment with Oxford Emergency.

The elements essential to recovery for a tortious interference with a business relationship are : (1) a business relation; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom. 45 American Jurisprudence 2d (1969) Interference, Section 50; see, also, *Cincinnati Bengals, Inc.* v. *Bergey* (S.D. Ohio, W.D. 1974), 453 F. Supp. 129.

The basic principle of a "tortious interference" action is that one, who is without privilege, induces or purposely causes a third party to discontinue a business relationship with another is liable to the other for the harm caused thereby. *Juhasz* v. *Quick Shops, Inc.* (1977), 55 Ohio App. 2d 51, 57. In order to determine the existence of a privilege, the fact-finder must consider:

"(a) the nature of the actor's conduct; (b) the nature of the expectancy with which the conduct interferes; (c) the relation between the parties; (d) the interest sought to be advanced by the actor; and (e) the social interest in protecting the expectancy on the one hand and the actor's freedom of action on the other hand." *Id.* at paragraph three of the syllabus.

In the case *sub judice*, the court below attempted to make factual findings on a motion for summary judgment. The court concluded that summary judgment was proper since no genuine issues of material fact existed between the parties. In its opinion, the trial court justified this result based on the fact that a hospital administrator has broad discretion which should not be disturbed by a judicial tribunal.

We find that this cause of action was not properly dismissed by summary judgment. The trial court, in its eagerness to resolve this matter, impermissibly invaded the domain of the trier-of-fact by concluding that the hospital did not act in a capricious, unreasonable or arbitrary manner. In fact, the court construed the supporting evidence and affidavits solely in favor of McCullough-Hyde rendering the summary suspension an inevitable result.

In addition, the trial court failed to properly address the "tortious interference" cause of action by neglecting to establish whether the elements of this tort were met by the evidence as presented by Wolf, and whether McCullough-Hyde did in fact have a "privilege" to act in such manner.

Therefore, since genuine issues of material fact exist as to the elements of "tortious interference" and "privilege," Wolf's assignment of error is well-taken. Accordingly, the judgment of the lower court is reversed and remanded regarding the elements of the tortious interference cause of action only.

*Judgment affirmed in apart,*
*reversed in part,*
*and cause remanded.*

YOUNG, J., Concurs.
JONES, P.J., Dissents.

JONES, P.J., Dissenting.
The trial court was correct in granting summary judgment to McCullough-Hyde. *Bouquette* v. *St. Elizabeth Corp.* (1989), 43 Ohio St. 3d 50, clearly authorizes McCullough-Hyde to suspend Dr. Wolf so long as the hospital does not act in an arbitrary, capricious or unreasonable manner. The evidence supporting and opposing McCullough-Hyde's motion for summary judgment simply does not raise genuine issues of material fact which would permit a finding that McCullough-Hyde acted in an arbitrary, capricious or unreasonable manner in temporarily suspending Wolf.

As the learned trial judge observed, the tort of "business interference" occurs when a person, without a privilege, induces or otherwise purposely causes a third party not to enter into or continue a business relationship, or perform a contract with another. *Juhasz* v. *Quik Shops, Inc.* (1977), 55 Ohio App. 2d 51. The trial court held, and I agree, that "In the best interests of patient care, Mr. Daniels was privileged to summarily suspend the clinical privileges possessed by Dr. Wolf, and this is precisely what occurred."

Assuming, *arguendo*, that Daniels erred, there is not a scintilla of evidence that Daniels, without privilege, in behalf of McCullough-Hyde, *induced or purposely caused* a third party,

*i.e.*, Oxford Emergency, to not perform any contract with Dr. Wolf.

Obviously the suspension, while in effect, prohibited Dr. Wolf from being employed by Oxford Emergency in McCullough-Hyde's emergency room, but the record is devoid of any suggestion that the purpose of the suspension was to interfere with a business relationship Dr. Wolf had with any third party, including Oxford Emergency. The suspension was rescinded and there is nothing in the record to support Dr. Wolf's theory that Oxford Emergency's failure to again place him in the McCullough-Hyde emergency room was attributable to such suspension.

When Dr. Bouquette was suspended by St. Elizabeth, such undoubtedly caused him much grief and "interfered" with his business relationships with third parties, probably including his patients and creditors. Since the "interference" was not tortious, Dr. Bouquette had no recourse against St. Elizabeth. *Bouquette, supra.* The majority has heretofore found that Dr. Wolf's due process rights were not violated by McCullough-Hyde's suspension. Accordingly, he has no recourse against McCullough-Hyde. I would affirm the trial court, and therefore dissent.