OPINION
{¶ 1} This is an appeal and a cross-appeal from a summary judgment rendered in favor of Akbar Shah, M.D. and against Cardiology South, Inc., and certain of its physicians, on their respective claims for relief arising from Dr. Shah's employment by Cardiology South, Inc., his subsequent purchase of an ownership interest in that corporation and his later termination.
 {¶ 2} Dr. Shah is a physician specializing in cardiology. Cardiology South, Inc. is a professional corporation owned and operated by a group of physiciancardiologists.
 {¶ 3} On February 5, 1999, Dr. Shah and Cardiology South, Inc. entered into a written employment agreement. The agreement had a three year term. It specified the salary Dr. Shah would be paid as well as bonuses available to him for the first two years. For the third year, the agreement provided that Dr. Shah would be paid the net of the revenues he generated.
 {¶ 4} On November 1, 2000, Dr. Shah purchased 400 shares of common stock in Cardiology South, Inc., from four physicians who owned the corporation. The four physicians are also defendants herein.
 {¶ 5} On December 20, 2000, Dr. Shah and Cardiology South, Inc., entered into an agreement whereby Dr. Shah would provide nuclear reading services to Cardiology South, Inc. The agreement provided the fee Dr. Shah would be paid for preforming the service.
 {¶ 6} Disagreements arose between Dr. Shah and the other four physicians in Cardiology South, Inc. concerning compensation Dr. Shah was due. The disagreements culminated in Dr. Shah's resignation and/or removal from Cardiology South, Inc.'s practice.
 {¶ 7} Dr. Shah commenced the underlying action against Cardiology South, Inc. on multiple claims for relief. Cardiology South, Inc. counterclaimed, likewise on multiple claims. Both sides filed motions for summary judgment. On March 5, 2004, the trial court granted their respective motions in part and denied them in part. Cardiology South, Inc. filed a timely notice of appeal. Dr. Shah filed a timely notice of cross-appeal.
 CARDIOLOGY SOUTH, INC.'S APPEAL {¶ 8} First Assignment of Error
 {¶ 9} "The trial court erred by giving an ex parte instruction to counsel for one of the parties to prepare a decision granting judgment on or dismissing all claims, and then by subsequently adopting, verbatim, the entire 28-page decision prepared by counsel."
 {¶ 10} Cardiology South, Inc. contends that the trial court, after indicating which parts of the parties' respective motions for summary judgment it would grant and which it would deny, instructed counsel for Dr. Shah, ex parte, to prepare a written judgment entry and order consistent with the court's rulings, which the court subsequently adopted and journalized as its own Decision, Order and Entry. Cardiology South, Inc. complains that in so doing the trial court surrendered its judicial authority to decide the matters before it.
 {¶ 11} Civ. R. 54(A) states: "`Judgment' as used these rules includes a decree and any order from which an appeal lies as provided in section 2505.02 of the Revised Code." Civ. R. 58(A) states: ". . . [u]pon a general verdict of a jury, [or] a decision announced, . . . the court shall promptly cause the judgment to be prepared and, the court having signed it, the clerk shall thereupon enter it on the journal."
 {¶ 12} The Civil Rules distinguish the "decision," which is the court's oral or written ruling on the issues before it, from the "judgment," which is the written final determination of those issues signed by the court and entered upon its journal. By allowing the court to "cause the judgment to be prepared," Civ. R. 58(A) permits the court to delegate its preparation to counsel for one of the parties. While Civ. R. 58(A) makes no similar provision with respect to the court's written decision, the practice is not prohibited by the Civil Rules. L.T.M.Builders Co. v. Village of Jefferson (1980), 61 Ohio St.2d 91.
 {¶ 13} In practice, courts frequently direct the prevailing party to prepare a judgment for the court's signature. Safeguards exist to protect an adverse party from overreaching or mistake by the party who prepares the proposed judgment. Proposed entries, because they are motions, must be served on opposing counsel, who then has fourteen days to serve a memorandum in opposition. Mont.Loc. R. 2.05 II.B.2. Mont. Loc. R. 2.17 contemplates written objections to "proposed entries of judgment." The court must rule on any objections before it signs and journalizes the order. Further, ex parte applications, orders, and entries are prohibited. Mont.Loc. R. 2.19.
 {¶ 14} Cardiology South, Inc.'s principal complaint appears to be that the court's instruction to counsel for Dr. Shah to prepare a decision and order was ex parte. If so, that procedure violated Mont.Loc. R. 2.19. However, Dr. Shah contends that the proposed decision and entry his counsel prepared was served on Cardiology South, Inc. on November 28, 2003, prompting objections from Cardiology South, Inc. with respect to its prejudgment interest provisions. The same venue offered an opportunity to object to the proposed judgment's other provisions. Failure to object waives any error arising from a variance from the ruling on the motions the court had orally "announced" and the written decision and judgment the court entered and journalized on March 5, 2004. Cardiology South, Inc. confirms that it objected. We find no prejudice to Cardiology South, Inc. resulting from the procedure the court followed.
 {¶ 15} The first assignment of error is overruled.
 {¶ 16} Second Assignment of Error
 {¶ 17} "The trial court erred in granting summary judgment in favor of plaintiff that he was underpaid in his first two years of employment by $273,535."
 {¶ 18} Summary judgment may not be granted unless the entire record demonstrates that there is no genuine issue of material fact and that the moving party is, on that record, entitled to judgment as a matter of law. Civ. R. 56. The burden of showing that no genuine issue of material fact exists is on the moving party. Harless v. Willis Day WarehousingCo. (1978), 54 Ohio St.2d 64. All evidence submitted in connection with a motion for summary judgment must be construed most strongly in favor of the party against whom the motion is made. Morris v. First National Bank Trust Co. (1970), 21 Ohio St.2d 25. In reviewing a trial court's grant of summary judgment, an appellate court must view the facts in a light most favorable to the party who opposed the motion. Osborne v. Lyles
(1992), 63 Ohio St.3d 326. Further, the issues of law involved are reviewed de novo. Nilavar v. Osborn (1998), 127 Ohio App.3d 1.
 {¶ 19} The Employment Agreement between Dr. Shah and Cardiology South, Inc. contains the following provisions concerning Dr. Shah's compensation:
 {¶ 20} "For the first year of his employment, the Employer [Cardiology South] shall pay the Employee [Dr. Shah] a guaranteed salary of $180,000. In addition, the Employer shall pay the Employee additional Compensation for his first year of employment of 30% of the Collected Revenues up to $400,000, less (i) the Employee's share of the Employer's Non-Direct Overhead Expenses for such year, and (ii) the $180,000 guaranteed salary; further, the Employer shall pay the Employee additional Compensation of 100%of the Collected Revenues over $400,000.
 {¶ 21} "For the second year of his employment hereunder, the Employer shall pay the Employee a guaranteed salary of $195,000. In addition, the Employer shall pay the Employee additional Compensation for his second year of employment 50% of the Collected Revenues up to $400,000, less (i) the Employee's share of the Employer's Non-Direct Overhead Expenses for such year, and (ii) the $195,000 guaranteed salary; further, the Employershall pay the Employee additional Compensation of 100%of the CollectedRevenues over $400,000.
 {¶ 22} "For the third and succeeding years of his employment hereunder, the Employer shall pay the Employee Compensation equal to 100% of the Net Revenues." (Emphasis supplied).
 {¶ 23} The Employment Agreement defines Collected Revenues to mean "revenues collected by the Employer during each year of the Employee's employment which are attributable to the Employee's services during such year. The Employee shall be compensated for all Collected Revenues in accordance with the provisions of this Section." In other words, "Collected Revenues" are the gross revenues the employer realizes from the employee's job performance.
 {¶ 24} The term "Net Revenues" as it appears in the third paragraph above is also defined by the Employment Agreement. It means "the revenues collected by the Employer and attributable to the Employee's services during such year less (i) the Employee's share of Non-Direct Overhead Expenses of the Employer, and (ii) the Employee's Direct Expenses for such year." In other words, "net revenues" are the revenues, after applicable deductions, the employer realizes from the employee's job performance.
 {¶ 25} The parties stipulated the amounts Dr. Shah was due under the first tier of the two-tier bonus scheme for his first and second years, which were paid. The trial court's finding adopts the stipulated amounts. The particular dispute concerns the second tier of the bonus scheme, which entitles Dr. Shah to "additional compensation of 100% of the Collected Revenues over $400,000" for each year. Cardiology South, Inc. took the position that it could deduct "non-direct" overhead expenses applicable to Collected Revenues in calculating what Dr. Shah was owed. The trial court found that the terms of the Employment Agreement unambiguously did not allow for that.
 {¶ 26} Cardiology South, Inc. argues that the trial court erred because the Employment Agreement is ambiguous on the matter of overhead deductions. It contends that the deduction from Collected Revenues of "Non-direct Overhead Expenses" applicable to the first tier bonus likewise applies to the 100% of Collected Revenues applicable to the second tier bonus in dispute. Cardiology South, Inc. points to the fact that the two provisions are separated by a semicolon, indicating that the construction given the term Collected Revenues in the prior clause likewise applies to the subsequent.
 {¶ 27} Even if the term "Collected Revenue" is given the same construction for each tier of the bonus scheme, the fact remains that the deduction of non-direct overhead expenses for which the first tier bonus expressly provides was omitted from the second tier. To apply it to the second tier would modify the definition of Collected Revenues that appears in the Employment Agreement, which unambiguously means gross revenues, converting it instead to the separately-defined classification of Net Revenues, which contemplates deduction of both direct and non-direct overhead expenses.
 {¶ 28} It would perhaps have made more sense to calculate the second tier bonus on the basis of Dr. Shah's Net Revenues for the year concerned. That would permit deduction of all applicable overhead expenses, including those direct overhead expenses not applicable to the first tier, from the revenues generated. The outcome would be more in keeping with the incentive system the parties agree they intended to create. Dr. Shah conceded in his deposition that a deduction for overhead would have been reasonable. As it is, payment to Dr. Shah of 100% of this gross revenues over $400,000 creates a windfall to his benefit.
 {¶ 29} Cardiology South, Inc. pleaded as an affirmative defense that "[b]y his actions or inactions, Shah is estopped from asserting the claims of the Complaint." Cardiology South, Inc. refers to the fact that Dr. Shah accepted payment of the second tier bonus for each of his first two in an amount from which overhead expenses had been deducted. Such an acceptance may operate as a waiver of strict compliance with the contract imposing the duty concerned. Allen v. Curles (1854), 6 Ohio St. 505. However, the Employment Agreement contains a "non-waiver" clause, requiring that waiver of any rights it confers must be in writing. Dr. Shah's mere conduct cannot satisfy that requirement.
 {¶ 30} Another defense on which Cardiology South, Inc. might reasonably rely with respect to the circumstances it cites is the defense of mutual mistake. Regardless of negligence or a failure to exercise care when entering a contract, a party thereto is entitled to show that there was no meeting of the minds or that the meeting of the minds was on terms different from those contained in the executed agreement. ParklawnManor, Inc. v. Jennings-Lawrence Co. (1962), 119 Ohio App. 151. Thus, if the parties actually intended the second-tier bonus to be 100% of Net Revenues, which the Employment Agreement defines as subject to direct and non-direct overhead deductions, the fact that the term "Collected Revenues" was used instead is not necessarily binding, because it was a mutual mistake. Dr. Shah's acquiescence in accepting the payments made is evidence from which that might be found. Of course, the fact that not all overhead expenses accountable in the Net Revenue definition were deducted is perhaps contrary evidence. All those matters present genuine issues of material fact that must be decided by a jury, not on summary judgment. The second assignment of error is sustained.
 {¶ 31} Third Assignment of Error
 {¶ 32} "The trial court erred in granting summary judgment in favor of plaintiff that he was underpaid in his third year of employment by $143,064."
 {¶ 33} The Nuclear Reading Agreement provides that Cardiology South, Inc. will pay Dr. Shah 16.6% of the Collected Revenues from nuclear cardiology studies he performed on the order of other physicians in the corporation. Again, Collected Revenues are gross revenues, with no overhead deductions. This provision became effective during Dr. Shah's third year of employment, when under the terms of his Employment Agreement Dr. Shah was to be paid 100% of his Net Revenues; that is, Collected Revenues less deductions for overhead. Cardiology South, Inc. applied the same overhead deduction provision to the 16.6% of Collected Revenues for nuclear studies Dr. Shah was due. The trial court found that the Nuclear Reading Agreement permits no such interpretation.
 {¶ 34} Cardiology South, Inc. argues on appeal that the trial court erred because, reasonably, the fees Dr. Shah is due under the Nuclear Reading Agreement are subject to overhead deductions, and are further a part of the compensation he was due under the Employment Agreement. So interpreted, Dr. Shah would be entitled to no additional compensation in consequence of the Nuclear Reading Agreement. We do not agree.
 {¶ 35} The Employment Agreement and the Nuclear Reading Agreement are separate contracts. Simply because the two coincide in the same year, the terms of one cannot be read into the other. That is what Cardiology South, Inc., attempted to do, by construing the 16.6% of the fees Dr. Shah is due under the Nuclear Reading Agreement as subject to the same overhead deductions applicable for that year to the Net Revenues he was due under the Employment Agreement. The trial court properly rejected that contention. The further contention that the fees Dr. Shah is due under the Nuclear Reading Agreement are a part of the compensation due him under the Employment Agreement likewise fails.
 {¶ 36} The Nuclear Reading Agreement reflects an effort by Cardiology South, Inc. to capitalize on Dr. Shah's qualifications to perform work the other physicians in the group were not qualified to perform. As a result, Cardiology South, Inc. was able to generate greater revenues for itself by not having to refer patients to other providers for the service. Dr. Shah's absolute allocation of 16.6% of the revenue Cardiology South, Inc. collected for those studies necessarily accounts for overhead expenses. It was not subject to further deductions for overhead. He is due the fees promised, over and above his other compensation.
 {¶ 37} The third assignment of error is overruled.
 {¶ 38} Fourth Assignment of Error
 {¶ 39} "The trial court erred in holding that the share purchase agreement failed for lack of mutual assent, in awarding dr. shah a refund of monies that he had paid under the agreement, and in dismissing cardiology south's claims for breach of the agreement."
 {¶ 40} The Employment Agreement provides that, Dr. Shah would acquire no right to the accounts receivable of Cardiology South, Inc., as a benefit of that agreement, but that the corporation's accounts receivable "[s]hall be used as a measure of the amount of the deferred compensation Payment which [Dr. Shah] is entitled to receive upon termination of this Employment Contract in accordance with the terms of this Section."
 {¶ 41} Almost two years later, Dr. Shah purchased 400 shares of common stock in Cardiology South, Inc. The Share Purchase Agreement provided that Dr. Shah could purchase a one-fifth interest in the corporations' accounts receivable, paying the amount due in installments. He had purchased a substantial part of his share of the accounts receivable before he was terminated.
 {¶ 42} The trial court rescinded the accounts receivable provisions of the Share Purchase Agreement, finding that no meeting of the minds had occurred to support it. The court based its conclusion on the further finding that the Employment Agreement and the Share Purchase Agreement are "impossible to reconcile logically" with respect to any interest in the accounts receivable that Dr. Shah acquired. The court ordered Cardiology South, Inc. to return the monies Dr. Shah had paid for his share.
 {¶ 43} The restrictions on Dr. Shah's ownership of accounts receivable imposed by the Employment Agreement are expressly limited to its terms. Therefore, they cannot affect the wholly separate provisions of the later Share Purchase Agreement, the fact that the two agreements involve the same subject matter notwithstanding. Dr. Shah concedes that the trial court erred when it found the two are irreconcilable.
 {¶ 44} The fourth assignment of error is sustained.
 {¶ 45} Fifth Assignment of Error
 {¶ 46} "The trial court erred in granting summary judgment on cardiology south's claim for breach of the employment agreement."
 {¶ 47} Cardiology South, Inc. alleged that Dr. Shah breached the Employment Agreement. The court granted summary judgment for Dr. Shah on the claim. The court reasoned that because Cardiology South, Inc. breached both the Employment Agreement and the Nuclear Studies Agreement, its own breaches barred Cardiology South, Inc.'s claim against Dr. Shah alleging his breach of the Employment Agreement.
 {¶ 48} The Nuclear Studies Agreement and the Employment Agreement are separate contracts, notwithstanding Cardiology South, Inc.'s attempts to merge the two with respect to compensation. Any breach by Dr. Shah of the Nuclear Studies Agreement can have no bearing on Cardiology South, Inc.'s claims alleging Dr. Shah's breach of the Employment Agreement.
 {¶ 49} We have found that the trial court erred when it granted summary judgment for Dr. Shah on his claim that Cardiology South, Inc. breached the Employment Agreement. That undermines the bar the court applied to Cardiology South, Inc.'s claim of a breach by Dr. Shah, albeit involving other rights and duties the Employment Agreement involves.
 {¶ 50} The fifth assignment of error is sustained.
 {¶ 51} Sixth Assignment of Error
 {¶ 52} "The trial court erred in dismissing cardiology south's counterclaim for breach of fiduciary duty."
 {¶ 53} Cardiology South, Inc. alleged that during the time he was a shareholder, Dr. Shah planned to and then did compete against the corporation, breaching the fiduciary duty he owed it and the other shareholders. Nilavar v. Osborne (1998), 127 Ohio App.3d 1. The trial court, having found the Share Purchase Agreement void, and on that basis having rescinded it, nullifying any fiduciary duties it imposed, granted summary judgment for Dr. Shah on Cardiology South, Inc.'s breach of fiduciary duty claim.
 {¶ 54} We have held that the trial court erred when it found the Share Purchase Agreement void. Further, the several other matters on which the court relied in support of its decision on this issue are fraught with genuine issues of material fact, which precludes summary judgment. Civ. R. 56(C).
 {¶ 55} The sixth assignment of error is sustained.
 {¶ 56} Seventh Assignment of Error
 {¶ 57} "The trial court erred in granting Dr. Shah prejudgment interest on each of his claims."
 {¶ 58} The trial court granted Dr. Shah prejudgment interest on three amounts: $273,535 for unpaid bonuses due under the Employment Agreement; $85,185 in reimbursement of monies he had paid for a share of accounts receivable pursuant to the Share Purchase Agreement, and $143,064 he is due under the Nuclear Studies Agreement.
 {¶ 59} With respect to the Employment Agreement and the Share Purchase Agreement, we have found that the trial court erred when it granted summary judgment for Dr. Shah. Therefore, because the respective monetary judgments of $273,533 and $85,185 on those claims must be vacated, the prejudgment interest on those awards which the court granted likewise fails.
 {¶ 60} We have sustained the trial court's finding that Dr. Shah is yet due $143,064 under the terms of the Nuclear Studies Agreement. Therefore, the award of prejudgment interest on that amount was proper.
 {¶ 61} The seventh assignment of error is sustained in part and overruled in part.
 DR. SHAH'S APPEAL {¶ 62} First Assignment of Error
 {¶ 63} "The trial court erred by denying Dr. Shah's motion for summary judgment on his declaratory judgment and breach of contract claims that cardiology south breached the employment contract by assigning him excessive and unequal on-call responsibilities."
 {¶ 64} Dr. Shah sought a declaratory judgment that Cardiology South, Inc. breached the Employment Agreement by requiring him to work "on call" assignments in excess of the formula for which the agreement provided. The trial court granted summary judgment to Cardiology South, Inc., reasoning that because he was compensated for the hours he worked pursuant to the salary and bonus provisions of the Employment Agreement, Dr. Shah suffered no damages for which he could be compensated by being required to work additional hours or days.
 {¶ 65} The purpose of compensatory damages is to put a party who has suffered a breach of a duty he is owed by another in as good a position as the party would have been in had he realized the benefit of his bargain. He is therefore entitled to the value of the "expectation interest" lost to him. Rasnick v. Tubbs (1998), 126 Ohio App.3d 431. The trial court's rationale, in essence, was that, at least with respect to compensation for the work he performed, Dr. Shah's expectation interest had not been denied him. Therefore, no compensatory damages were due.
 {¶ 66} It may be that Dr. Shah was inconvenienced by Cardiology South, Inc.'s breach by loss of personal time. He then might be entitled to punitive damages if Cardiology South, Inc.'s conduct was tortious. Inre Graham Square, Inc (1997), 126 F.3d 823. Dr. Shah sought no punitive damages. Nevertheless, we believe that the trial court erred.
 {¶ 67} Dr. Shah sought a declaratory judgment concerning whether Cardiology South, Inc. breached the Employment Agreement in the respect alleged. His claim was brought pursuant to the Declaratory Judgment Act, R.C. Chapter 2721, which authorizes courts to "declare rights, status, and other legal relations whether or not further relief could be claimed." R.C. 2721.02 The court's declaratory jurisdiction is not confined to cases in which the parties or one of them has a cause of action independent of the act. Madget v. Madget (1949),85 Ohio App.3d 18. The availability of damages is therefore irrelevant. The only requirement is that an actual controversy exists.Karches v. City of Cincinnati (1988), 38 Ohio St.3d 12. A controversy exists for that purpose when there is a genuine dispute between parties having adverse legal relations of sufficient immediacy and reality to warrant issuance of a declaratory judgment. Wagner v. Cleveland (1988),62 Ohio App.3d 8.
 {¶ 68} Dr. Shah sought a declaratory judgment finding a breach of contract as a defensive tactic. He anticipated that Cardiology South, Inc. would allege a breach of the Employment Agreement on his part, which it did in its counterclaim. Dr. Shah's avowed purpose was to avoid a judgment against him on that claim by showing that Cardiology South, Inc.'s breach of the agreement's "on call" provisions excused his own alleged nonperformance. How that might play out can't now be known, but, irrespective of monetary damages, Dr. Shah was entitled to ask the court to declare whether Cardiology South, Inc. had breached its own promise in the contract on which their "legal relations" were founded. R.C 2721.02.
 {¶ 69} The first assignment of error is sustained.
 {¶ 70} Second Assignment of Error
 {¶ 71} "The trial court erred by denying Dr. Shah's motion for summary judgment with respect to the share purchase agreement."
 {¶ 72} Dr. Shah moved for summary judgment on his claim that pursuant to the Share Purchase Agreement he is entitled to the value of the portion of Cardiology South, Inc.'s accounts receivable for which he paid. Having found the accounts receivable provisions of the Share Purchase Agreement unenforceable, the trial court denied Dr. Shah's motion.
 {¶ 73} We have found that the trial court erred when it held the Share Purchase Agreement's provisions unenforceable. (See Defendant-Appellant's Fourth Assignment of Error.) Further, the parties apparently agree that Dr. Shah is entitled to the value of the share of the accounts receivable he purchased. However, inasmuch as that value is in dispute, summary judgment for Dr. Shah on his claim is premature.
 {¶ 74} The second assignment of error is overruled.
 {¶ 75} Third Assignment of Error
 {¶ 76} "The trial court erred by granting cardiology south's motion for summary judgment on dr. shah's claim for tortious interference with business relationships."
 {¶ 77} Dr. Shah's complaint alleged that Cardiology South, Inc., through one of its owner-physicians, Dr. Tabrah, "wrongfully caused the termination of physicianpatient relationships established by Plaintiff during the term of his employment." In his deposition, Dr. Shah stated that after he was terminated a number of his patients were not told where he had gone, and/or their records were not transferred, and/or they were given misinformation. According to Dr. Shah, this caused him to lose patients he otherwise might have continued to treat. Cardiology South, Inc. argues that these were patients of Dr. Tabrah's, whom he had referred to Dr. Shah while he was a member of the group, and who remained as patients after Dr. Shah was terminated.
 {¶ 78} The trial court granted summary judgment for Cardiology South, Inc. on Dr. Shah's tortious interference claim. The court found that Dr. Shah failed to show that he lost patients as a direct result of some wrongful act on the part of Cardiology South, Inc. in which it was not privileged to engage. The court reasoned that "[a]fter Dr. Shah terminated his relationship with Cardiology South, however, Cardiology South had an equal right to compete with Dr. Shah for business from patients." (Decision, p. 25).
 {¶ 79} In Miller Bros. Excavating, Inc. v. Stone Excavating, Inc. (Jan 16, 1998), Greene App. No. 97-CA-69, we wrote:
 {¶ 80} "The tort of interference with a business relationship is well established. "The elements essential to recovery for a tortious interference with a business relationship are: (1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." (Citations omitted.) Wolf v.McCullough-Hyde Memorial Hosp., Inc. (1990), 67 Ohio App.3d 349, 355,586 N.E.2d 1204. "The torts of interference with business relationships and contract rights generally occur when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." (Citations omitted.) A B — Abell Elevator Co.v. Columbus/Cent. Ohio Bldg. Constr. Trades Council (1995),73 Ohio St.3d 1, 14, 651 N.E.2d 1283. "The basic principle of a `tortious interference' action is that one, who is without privilege, induces or purposely causes a third party to discontinue a business relationship with another is liable to the other for the harm caused thereby." Wolf,67 Ohio App.3d at 355, 586 N.E.2d 1204, citing Juhasz v. Quik Shops,Inc. (1977), 55 Ohio App.2d 51, 57, 9 O.O.3d 216, 219, 379 N.E.2d 235,238." Id., pp. 8-9.
 {¶ 81} The trial court reasoned that the physicianpatient relationship is a business interest, and we agree. However, in a summary judgment proceeding the evidence must be construed most strongly in favor of the party against whom the motion is made. Civ. R. 56(C). The real issue, therefore, is whether in acting as Dr. Shah said it had, Cardiology South, Inc. interfered in the relationship between Dr. Shah and his patients in a way in which Cardiology South, Inc. was not privileged to act.
 {¶ 82} In ordinary commercial dealings, a business enterprise has no obligation to assist its customers in transferring their patronage to a former employee who has entered into competition with it. Thus, the former employer, by reason of the new competition, might be privileged to act in the ways Cardiology South, Inc. is alleged to have acted. However, the rule that applies to arms-length commercial relationships does not necessarily apply in the same way to professional relationships.
 {¶ 83} The physician-patient relationship is one of trust and confidence. Notwithstanding any former employer/employee relationship that existed, a professional medical corporation is not privileged to deny information about its former physician/employee's whereabouts to patients he treated while he was an employee. Neither is it privileged to refuse to forward medical records concerning care administered to the patient by the physician while he was an employee. That is not to say that some reasonable compensation for the information forwarded might not be required. However, it is inimical to the patient's wellbeing, if only the sense of well-being, for the professional corporation to act in that way. Therefore, we cannot find that Cardiology South, Inc. was privileged to act in the way it allegedly did.
 {¶ 84} Cardiology South, Inc. argues that summary judgment was proper in any event because Dr. Shah was unable in his deposition to identify any former patient whose care was lost to him as a proximate result of the actions of Cardiology South, Inc. It then became Dr. Shah's reciprocal burden to offer evidence showing who those persons were or what their care that was lost to him might have involved. Dresher v.Burt (1996), 75 Ohio St.3d 280. He offered none. Therefore, summary judgment was proper.
 {¶ 85} The third assignment of error is overruled.
 {¶ 86} Fourth Assignment of Error
 {¶ 87} "The trial court erred by granting cardiology south's motion for summary judgment on Dr. Shah's claims for breach of fiduciary duty, oppression, and equitable accounting."
 {¶ 88} It appears that the trial court granted summary judgment for Cardiology South, Inc. on these claims for relief based on the summary judgments the court had granted on the issues of breach of the Employment Agreement and the unenforceability of the Share Purchase Agreement. Our reversals of those summary judgments requires us to likewise reverse the summary judgments the court granted in favor of Cardiology South, Inc. on Dr. Shah's further claims which this assignment of error concerns. Cardiology South, Inc. presents alternative arguments for affirmance. However, they are too fraught with issues of fact to warrant that relief. Civ. R. 56(C).
 {¶ 89} The fourth assignment of error is sustained. Conclusion
 {¶ 90} The judgment from which this appeal was taken will be Affirmed, in part, and Reversed, in part, and the case is remanded to the trial court for further proceedings consistent with this opinion.
Fain, J. and Young, J., concur.