JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, Katherine Shultzaberger ("Shultzaberger") appeals from a decision of the trial court that granted defendant-appellee, Prince Izant Company's ("PI") motion for summary judgment on Shultzaberger's claims. Upon review, we conclude that there are genuine issues of material fact and that PI is not entitled to summary judgment on Shultzaberger's claims. Accordingly, we reverse and remand.
 {¶ 2} For purposes of this appeal which concerns the entry of summary judgment, the substantive facts must be construed in a light most favorable to Shultzaberger. Civ.R. 56.
 {¶ 3} PI trained Shultzaberger to check the parts produced by its machines. On September 10, 2002, Shultzaberger was working for PI when her hair got caught in a machine, causing the injuries that are the subject of this case.
 {¶ 4} Prior to that date, Shultzaberger had a similar incident while working on another machine at PI.
 {¶ 5} Shultzaberger complied with the company's alleged policy concerning hair restraints; specifically, she always wore her hair in a ponytail.[1] The company was aware of the prior accident, in which strands of Shultzaberger's hair had been *Page 2 
caught in an unguarded portion of a machine. Despite Shultzaberger's previous incident where her hair became ensnarled, the company made no changes to its hair restraint policy or in the manner in which Shultzaberger was to check parts from the machines.
 {¶ 6} The trial court granted PI's motion for summary judgment and held, in part, as follows: "the plaintiff in this case cannot demonstrate all the elements of the Fyffe test. While operating a machine No. 69 is arguably a dangerous process, the second element of the Fyffe test — substantial certainty — has not been met. For example, it is not substantially certain that a bald employee operating machine 69 would be injured. Further, regarding element 3 of Fyffe, there is no evidence that the employer required the plaintiff to place her head in a position that would ensnarl her hair. Therefore, defendant's motion for summary judgment is granted."
 {¶ 7} Shultzaberger appeals from that decision, asserting two assignments of error concerning the propriety of summary judgment and will, therefore, be addressed together.
 {¶ 8} "I. The trial court erred in granting summary judgment in favor of appellee Prince Izant Company by finding that appellants had not shown that there was a substantial certainty of harm.
 {¶ 9} "II. The trial court erred in granting summary judgment in favor of appellee Prince Izant Company when it held that `there was no evidence that the employer required the plaintiff to place her head in a position that would ensnarl her *Page 3 
hair' as the proper test of the evidence is whether with knowledge of a substantial certainty of harm the employer required the employee to continue to perform the dangerous task."
 {¶ 10} Shultzaberger claims that the trial court erred in granting summary judgment in favor of PI because genuine issues of material fact existed concerning her claim for employer intentional tort.
 {¶ 11} An appellate court reviews a trial court's grant of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine if, as a matter of law, no genuine issues exist for trial."Brewer v. Cleveland City Schools (1997), 122 Ohio App.3d 378, citingDupler v. Mansfield Journal (1980), 64 Ohio St.2d 116, 119-120.
 {¶ 12} Summary judgment is appropriate where it appears that (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v.Willis Day Warehousing Co., Inc. (1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C).
 {¶ 13} The burden is on the movant to show that no genuine issue of material fact exists. Id. Conclusory assertions that the nonmovant has no evidence to prove *Page 4 
its case are insufficient; the movant must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, affidavits, etc., which affirmatively demonstrate that the nonmovant has no evidence to support his claims. Dresher v.Burt (1996), 75 Ohio St.3d 280, 293; Civ.R. 56(C). Unless the nonmovant then sets forth specific facts showing there is a genuine issue of material fact for trial, summary judgment will be granted to the movant.
 {¶ 14} In an action against an employer for intentional tort, a plaintiff must show:
 {¶ 15} "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Fyffe v. Jeno's, Inc.
(1991), 59 Ohio St.3d 115, paragraph one of the syllabus.
 {¶ 16} In establishing an employer intentional tort, "proof of the actual or subjective intent of the actor to accomplish the consequences is not required." Van Fossen v. Babcock Wilcox Co. (1988),36 Ohio St. 3d 100, 117. *Page 5 
 {¶ 17} 1. Whether the evidence presented a genuine issue as to the "knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation."
 {¶ 18} There was substantial evidence to create a genuine issue of material fact as to the first prong of the Fyffe test. PI knew the potential for hair to become entangled in the machinery due to Shultzaberger's prior incident. Also, the Employee Handbook recognized that "[l]oose fitting clothing (i.e. unbuttoned shirts, smocks, etc.) as well as jewelry, present safety hazards around moving equipment * * *." It follows that long hair would pose a similar hazard. The record also includes the affidavit of plaintiff's expert opining that Shultzaberger's injuries were the result of a dangerous process, procedure, instrumentality, or condition within PI's business operation of which PI had knowledge. Accordingly, the trial court correctly reasoned that the evidence arguably met the first prong of theFyffe test.
 {¶ 19} 2. Whether the evidence presented a genuine issue as to the "knowledge by the employer that if the employee is subjected by her employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty."
 {¶ 20} The burden imposed on an employee to prove that any harm was a substantial certainty is a substantial burden. However, in motions for summary judgment the burden is on the moving party. Dresher v. Burt
(1996), 75 Ohio St.3d 280. That burden is to show that no genuine issue of material fact exists concerning *Page 6 
an issue on which the employee's claim depends. Wolf v. McCullough-HydeMemorial Hosp., Inc. (1990), 67 Ohio App.3d 349. All doubts must be resolved in favor of the employee. Hampton v. Trimble (1995),101 Ohio App.3d 282, 286.
 {¶ 21} "To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. Where the risk is great and the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure, or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent."Van Fossen, 36 Ohio St.3d at paragraph 6 of the syllabus, other citations omitted.
 {¶ 22} The trial court held that Shultzaberger could not satisfy the second prong of Fyffe, supra, 59 Ohio St. 3d 115, because it is not substantially certain that a "bald employee" would be injured operating machine 69.
 {¶ 23} The appropriate standard is to construe the facts of this case in a light most favorable to a nonmoving party in assessing whether summary judgment is warranted. Here, Shultzaberger was an employee who had long hair. The inquiry is *Page 7 
whether it was substantially certain that an employee who had long hair tied up in a ponytail would get his/her hair ensnarled in machine 69 causing harm. There is evidence in the record to create, at the least, a genuine issue of fact that PI knew this was substantially certain to occur.
 {¶ 24} PI, through its representatives, admitted that an employee's hair had been entangled in an unguarded part of a machine at least once before, even though that employee was in compliance with PI's hair restraint policy. It happened to Shultzaberger when she was working at another machine in April 2002. Although she was not injured at that time, a reasonable mind could conclude that injury is substantially certain under those circumstances.
 {¶ 25} The record also contains the affidavit of Shultzaberger's expert, who is a registered professional engineer with a stated expertise in identifying hazards in machinery. The engineer inspected machine 69 and averred that PI failed to provide OSHA-required guarding on the machine and failed to provide Shultzaberger with "personal protective equipment required by the Specific Safety Requirements of the Industrial Commission of Ohio." The engineer referenced Rule 4121:1-5-17(G)(2)(e), which states: "A hat, cap or net shall be provided where there is danger of hair entanglement in moving parts of machinery or equipment. It shall be designed to enclose all loose hair and be adjustable to accommodate all head sizes * * *." *Page 8 
 {¶ 26} Based on the facts and the safety requirements, plaintiffs expert opined that "injury to someone at some time was inevitable * * * PI knew of the existence of a dangerous process, procedure, instrumentality or condition within their business operation * * * PI knew that if their employees were subjected by their employment to this dangerous process, procedure, instrumentality or condition, then harm to their employees would be a substantial certainty."
 {¶ 27} Accordingly, we find that the trial court erred when it held that Shultzaberger did not present enough evidence to create a genuine issue of material fact concerning the second prong of the Fyffe test.
 {¶ 28} 3. Whether "the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task?"
 {¶ 29} This is the third prong of the Fyffe test which the trial court found to be lacking. The trial court reasoned, and PI continues to rely on the rationale, that "there is no evidence that the employer required the plaintiff to place her head in a position that would ensnarl her hair."
 {¶ 30} PI contends that because of Shultzaberger's prior accident, "she was aware that if her hair came into contact with a moving gear, it would get caught." PI places the onus upon Shultzaberger to keep her head clear of the rotating gears while squatting to retrieve parts. *Page 9 
 {¶ 31} PI was equally aware of the potential for the machines to ensnarl an employee's hair. Nevertheless, PI's solution was to simply instruct Shultzaberger to keep her hair up. Following the first incident, Shultzaberger was expected to, and did, continue working.
 {¶ 32} Although PI undoubtedly would not have specifically instructed Shultzaberger to tilt her head in a manner that would ensnarl her hair, the method in which she was trained to retrieve parts from the machine did nothing to preclude, minimize, or avoid this hazard. For example, she was not instructed to stop the machine before squatting down near the machine to catch parts from the chute. Employees were not required to wear hair nets or caps, and some parts of the machine had rotating objects that were unguarded.
 {¶ 33} Shultzaberger "would stand with her right side to the machine, squat and reach inside with her right hand to catch the part * * *. To reach the discharge chute she had to lean to the right. At the time of the incident, her hair was caught and pulled into the machine by the unguarded rotating spindle shaft."[2] Plaintiff's expert opined that Shultzaberger's "injuries were not the result of how she positioned herself. She merely made the foreseeable mistake of getting too close to an unguarded dangerous rotating shaft as she reached to retrieve a part."[3] *Page 10 
 {¶ 34} Employees were not required to turn off the machines before checking the parts. A PI employee testified that one has to bend down and squat to retrieve parts underneath the machines. Employees could either face the machine or "sort of be on the side."
 {¶ 35} PI knew that machine 69 was unguarded at the location where Shultzaberger's hair was caught, and that she had previously caught her hair in a machine even though she had complied with the hair restraint policy. When construed in a light most favorable to Shultzaberger, the evidence does not establish that reasonable minds could reach a conclusion favorable only to PI on the third prong of theFyffe test.
 {¶ 36} Shultzaberger's assignments of error are sustained.
Judgment reversed and remanded for further proceedings.
It is ordered that appellant recover from appellee her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, J., and ANN DYKE, J., CONCUR.
[1] PI's Employee Handbook at pg. 16 provided certain "Safety and Housekeeping" practices, which did not include a hair restraint policy. However, the policy did provide that "Loose fitting clothing (i.e. unbuttoned shirts, smocks, etc.) as well as jewelry, present safety hazards around moving equipment and should be avoided at all times. Shorts are prohibited."
[2] Affidavit of Richard E. Harkness, Ph.D, P.E. at ¶ 10.
[3] Id. at ¶ 23. *Page 1