[Cite as *Premier Med. Mgt., Inc. v. Bur. of Workers' Comp.*, 2013-Ohio-5935.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

PREMIER MEDICAL MANAGEMENT, INC., et al.

    Plaintiffs

    v.

BUREAU OF WORKERS' COMPENSATION

    Defendant

Case No. 2012-07358

Judge Patrick M. McGrath

ENTRY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

{¶ 1} On March 22, 2013, defendant filed a motion for summary judgment pursuant to Civ.R. 56(B). On April 19, 2013, with leave of court, plaintiffs filed a response. On May 17, 2013, with leave of court, defendant filed a reply. Defendant's motion is now before the court for a non-oral hearing pursuant to L.C.C.R. 4(D).

{¶ 2} Civ.R. 56(C) states, in part, as follows:

{¶ 3} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." *See also*

*Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317 (1977).

{¶ 4} According to the complaint, Premier Medical Management (Premier), owned by Donna Murrell and William Rabatin (collectively referred to as plaintiffs), provided file reviews and conducted medical examinations of claimants to the Ohio Bureau of Workers' Compensation (BWC). Plaintiffs allege that on or about October 7, 2010, agents from BWC hand-delivered a letter to plaintiffs stating that Premier had a breach in its security and that BWC would no longer schedule file reviews or medical examinations with Premier. Plaintiffs state that on or about October 7, 2010, an additional letter containing similar allegations was sent to medical professionals for whom Premier was the authorized administrative agent. Plaintiffs allege that on that same date, BWC agents took possession of their physical documents and medical files. Plaintiffs allege that BWC, however, continued to schedule independent medical examinations or file reviews and that several confiscated files were returned to plaintiffs to complete the files as they normally would. According to plaintiffs, Premier has effectively ceased generating revenue as a result of the actions of BWC. Plaintiffs claim tortious interference with business relationships.[1]

{¶ 5} "The basic principle of a 'tortious interference' action is that one, who without privilege, induces or purposely causes a third party to discontinue a business relationship with another is liable to the other for the harm caused thereby." *Walter v. ADT Sec. Sys.*, 10th Dist. No. 06AP-115, 2007-Ohio-3324, ¶ 33, quoting *Wolf v. McCullough-Hyde Mem. Hosp.*, 67 Ohio App.3d 349, 355 (12th Dist.1990). "The elements of tortious interference with a business relationship are (1) a business relationship; (2) the tortfeasor's knowledge thereof; (3) an intentional interference

---

[1]On January 2, 2013, the court dismissed plaintiffs' claims regarding defamation, abuse of process, intentional infliction of emotional distress and alleged violations of the Ohio Constitution.

causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Id.* (Citations omitted.)

{¶ 6} "The doctrine of qualified privilege is applicable to tortious interference cases, and acts performed within a business relationship are considered subject to a qualified privilege." *Id.*, quoting *Chandler & Assoc., Inc. v. America's Healthcare Alliance, Inc.*, 125 Ohio App.3d 572, 583 (8th Dist.1997). "To overcome a qualified privilege, a party must show the wrongdoer acted with actual malice, which denotes an unjustified or improper interference with the business relationship." *Id.*

{¶ 7} "[I]n determining whether an actor has acted improperly in intentionally interfering with a contract or prospective contract of another, consideration should be given to the following factors: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties." *Fred Siegel Co., L.P.A., v. Arter & Hadden*, 85 Ohio St.3d 171, 178-179 (1998), citing 4 Restatement of the Law 2d, Torts, Section 767 (1979). *See also Havensure L.L.C., v. Prudential Ins. Co. of Am.*, 595 F.3d 312 (6th Cir.2010). It is plaintiffs' burden to show that defendant's conduct was not privileged. *Havensure, supra*, at 316.

{¶ 8} Defendant argues that it had a qualified privilege to notify the medical professionals for whom Premier was the authorized agent that plaintiffs had failed to properly maintain or destroy confidential medical records. In support of its motion, defendant presented the affidavits of Tammie Mihaly, Manager of Provider Relations for the BWC, Special Agent Jeffery Adams, and Special Agent Sheila Debrock-Matzinger.

{¶ 9} Mihaly avers that BWC entered into a contract with Disability Evaluators' Panel (DEP) physicians for the evaluation of injured workers. Affidavit, ¶ 3. According to Mihaly, the contract allows DEP physicians to designate an administrative agent,

whose duties include scheduling examinations, writing reports, and managing billing. Affidavit, ¶ 4. The contract incorporates the DEP Evaluators Handbook, which provides the acceptable methods for destroying confidential medical records. Affidavit, ¶ 7-8. The contract further provides that DEP physicians are responsible for the actions of its administrative agent. *Id.* BWC Special Investigations Division notified the Medical Services Division that plaintiffs were "failing to properly maintain or destroy confidential medical records and creating a security/sensitive data breach[.]" Affidavit, ¶ 9. As a result of the security breach, BWC suspended DEP physicians that designated plaintiffs as their administrative agent. Affidavit, ¶ 10.

{¶ 10} Adams avers that special agents investigate health care providers for a variety of fraudulent conduct and that such investigations include "trash runs" at both business and residential locations in an effort to obtain related information. Affidavit, ¶ 2. Adams collected plaintiffs' trash on September 8, 14, 28, October 5, and 12, 2010. Affidavit, ¶ 4. Adams states that in plaintiffs' trash, he discovered numerous documents including psychological reports, diagnoses, records of patients' medications, social security numbers, and other private medical information, all of which should not have been in the trash. *Id.* Adams even discovered a memorandum from BWC providing specific instructions relative to shredding of sensitive material. *Id.*

{¶ 11} Debrock-Matzinger assigned special agents to perform trash runs as part of an investigation of Premier. Debrock-Matzinger, ¶ 2-3. After learning that the special agents had found claimants' personal medical information in plaintiffs' trash, Debrock-Matzinger contacted plaintiffs to ask for all BWC-related records. Debrock-Matzinger, ¶ 4-5. After reviewing the records, BWC discovered that some cases were partially completed and returned those cases to Premier to complete the work that it had already begun. Debrock-Matzinger, ¶ 8.

{¶ 12} Plaintiffs argue that no data breach occurred, or if one did occur, that such a breach was through no fault of plaintiffs. As such, plaintiffs maintain that defendant's actions were inappropriate.

{¶ 13} In support of their position, plaintiffs provided the affidavit of Donna Murrell, who avers as follows:

{¶ 14} "4)   In 2004, Premier began operating as an agent for various medical professionals who were associated with the DEP program through BWC;

{¶ 15} "5)   From the time it began operating through October 2010, Premier enjoyed success, strong growth, and a good reputation;

{¶ 16} "6)   During this period of time, Premier appropriately interacted with BWC personnel and medical professionals to accomplish file reviews and medical examinations, complied with all laws and administrative directives, and experienced no violations or breaches regarding the maintenance of confidential medical records;

{¶ 17} "7)   On or about October 7, 2010, agents from BWC entered my home, without subpoenas or warrants, and hand-delivered a letter stating generally that Premier had a breach in its security and that BWC would no longer schedule independent medical examinations or file reviews with any DEP physician for whom Premier, Plaintiffs (individually or jointly), or any entity owned or controlled by Plaintiffs (individually or jointly) is the authorized administrative agent;

{¶ 18} "8)   While at my home on or about October 7, 2010, agents from BWC, without subpoenas or warrants, took possession of nearly all physical documents and medical files in our possession, but left all computer hard drives and other hardware that was described in the letter;

{¶ 19} "9)   Approximately 3 weeks later, BWC representatives received the final 2 boxes of physical files that had been left at our home on October 7, 2010;

{¶ 20} "10)   Despite being told BWC would no longer do business with us, we continued to receive files from BWC to schedule independent medical examinations or file reviews;

{¶ 21} "11)   Several of the confiscated files were eventually returned by BWC employee Special Agent Sheila Debrock-Matzinger for the purpose of having me personally complete the files as I normally would have done, despite BWC apparently stripping myself and Premier of the proper credentials to do so; and

{¶ 22} "12)   I was not notified of the nature of the alleged breach of security for approximately 3 weeks, when I was finally informed generally that a document was found in our residential trash."

{¶ 23} Upon review, the only reasonable conclusion to be drawn is that defendant had a qualified privilege to contact the DEP physicians, for whom Premier was the authorized administrative agent, and that such a privilege allowed defendant to inform such physicians of plaintiffs' security breach.   There is no dispute that defendant contracted with the DEP physicians and that a part of that contract specifies acceptable methods for destroying confidential medical records.   Additionally, there is no dispute that defendant holds DEP physicians responsible for the acts of their designated administrative agent.   Furthermore, plaintiffs have not presented the court with any evidence that defendant's conduct, motive, or interests in contacting the DEP physicians were somehow improper and thus not privileged.   Moreover, plaintiffs do not dispute defendant's assertion that confidential medical records were found in plaintiffs' residential trash.

{¶ 24} Accordingly, the court concludes that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law.   Therefore, defendant's motion of summary judgment is GRANTED and judgment is rendered in favor of defendant.   All previously scheduled events are VACATED. Court costs are assessed against plaintiffs.   The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
PATRICK M. MCGRATH
Judge

cc:

Kristin S. Boggs       Michael J. Ash
Velda K. Hofacker       52 Public Square
Assistant Attorneys General       Medina, Ohio 44256
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

003
Filed August 2, 2013
Sent to S.C. Reporter April 30, 2014